IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEFFREY LICHTENSTEIN, THE MEMPHIS AND WEST TENNESSEE AFL-CIO CENTRAL LABOR COUNCIL, THE TENNESSEE STATE CONFERENCE OF THE NAACP, THE EQUITY ALLIANCE, MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, FREE HEARTS,<br><br>                          Plaintiffs,<br><br>     v.<br><br>TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, and AMY WEIRICH, in her official capacity as the District Attorney General for Shelby County, Tennessee,<br><br>                          Defendants. | **PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Civil No. _____<br><br>Related Case No. 3:20-cv-00374-EJR |

1.      In the State of Tennessee, any Tennessean who is asked by their family member, friend, or fellow citizen to provide them with a copy of the absentee ballot application—which the State makes available online—cannot do so without committing a felony. That is because pursuant to Tennessee Code § 2-6-202(c)(3), "[a] person who is not an employee of an election commission commits a Class E felony if such person gives an application for an absentee ballot to any person." For Plaintiffs, this means that in the course of their voter engagement efforts—which this year, include encouraging voters to vote absentee—they cannot actually provide the absentee ballot application to any voter, even if the voter asks for it.

2.      This law serves no purpose, and, by unreasonably restricting the manner in which Plaintiffs can engage and encourage the voting public, imposes an extraordinarily burdensome

1

restraint on Plaintiffs' right of free speech. Plaintiffs respectfully request this Court to declare Tennessee Code § 2-6-202(c)(3) unconstitutional and enjoin Defendants' enforcement of the law.

## JURISDICTION AND VENUE

3. This action is brought under the United States Constitution. The Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 42 U.S.C. § 1983. It also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to grant the declaratory relief requested.

4. This Court has personal jurisdiction over each Defendant because each is a citizen of Tennessee or has his or her principal place of business in the State.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because some Defendants reside in this District and all Defendants reside in Tennessee, and because a substantial portion of the events giving rise to these claims occurred in the Middle District of Tennessee.

## PARTIES

I. **Plaintiffs**

6. Plaintiff Jeffrey Lichtenstein is a labor organizer who resides in Memphis, Tennessee. Mr. Lichtenstein is a qualified voter and has been registered to vote in Shelby County, Tennessee since at least 2013. Mr. Lichtenstein serves as the Executive Secretary of The Memphis and West Tennessee AFL-CIO Central Labor Council, through which he often engages in voter advocacy and engagement efforts. As a part of these efforts, Mr. Lichtenstein often distributes voter registration forms to both MCLC members and members of his own community because he knows through personal experience that the most effective way to engage voters is to give them everything they need to vote. This Fall, Mr. Lichtenstein similarly wishes to distribute absentee ballot applications to voters in advance of the November election because he knows it is far more

effective than directing them to the Secretary of State or Shelby County Election Commission websites.

7. Plaintiff The Memphis and West Tennessee AFL-CIO Central Labor Council, also known as the Memphis Central Labor Council ("MCLC"), is a Memphis, Tennessee-based union that acts as an umbrella organization for 41 affiliate unions based in western Tennessee. MCLC is dedicated to representing the interests of working people at the state and local levels by advocating for social and economic justice. In support of its advocacy agenda, MCLC routinely engages in voter outreach efforts, including of its approximately 20,000 members and their families, through voter identification, education, and mobilization drives. It plans to undertake similar engagement efforts in advance of the November 2020 elections, but in light of the ongoing COVID-19 pandemic, will dedicate additional resources towards absentee voter engagement that includes informing eligible absentee voters of their right to vote by mail and helping them apply for absentee ballots. If permitted, MCLC plans to provide absentee ballot applications to potential absentee voters, including those among its approximately 20,000 members, as part of its engagement activity. In order to efficiently and effectively reach the most voters, MCLC will need to do so in both a solicited and an unsolicited manner.

8. Plaintiff The Tennessee State Conference of the NAACP ("Tennessee NAACP") is a nonpartisan, multi-racial, non-profit membership organization headquartered in Jackson, Tennessee. Tennessee NAACP has three regional divisions—Eastern, Middle, and Western Tennessee—as well as the 33 local branch units and 22 college chapters and youth councils. Tennessee NAACP was founded in 1946 to serve as the Tennessee arm of the National Association for the Advancement of Colored People. Its mission is to eliminate race-based discrimination through securing political, educational, social, and economic equality rights and ensuring the

3

Case 3:20-cv-00736   Document 1   Filed 08/28/20   Page 3 of 13 PageID #: 3

health and well-being of all persons. Tennessee NAACP has more than 10,000 members across the State, primarily consisting of African Americans, other people of color, and allies. Tennessee NAACP and most local branch units are primarily volunteer-run, and all officers are volunteers.

9. In support of its advocacy agenda, Tennessee NAACP engages in voter outreach efforts, including through voter registration, education, and mobilization work in communities that have had historically low voter registration and turnout. Tennessee NAACP plans to undertake similar engagement efforts in advance of the November 2020 elections, but in light of the ongoing COVID-19 pandemic, will dedicate a significant amount of financial resources and volunteer time towards absentee voter engagement. As part of this engagement, Tennessee NAACP will inform eligible absentee voters of their right to vote by mail and help eligible voters apply for their mail-in ballots. If permitted, Tennessee NAACP plans to provide absentee ballot applications to potential absentee voters, including those among its approximately 10,000 members, as part of its engagement activity. In order to reach the most voters, Tennessee NAACP will need to do so in both a solicited and an unsolicited manner.

10. Plaintiff The Equity Alliance is a Nashville, Tennessee-based nonpartisan, non-profit organization that seeks to equip citizens with tools and strategies to engage in the civic process and empower them to take action on issues affecting their daily lives. The Equity Alliance is dedicated to expanding the electorate, educating communities of color about the political process, and engaging and empowering citizens to vote. In the upcoming election, The Equity Alliance anticipates that it will invest considerable effort towards informing and engaging voters about absentee voting, including, if possible, providing them with tools—like the absentee ballot application itself—to exercise their right. Some of The Equity Alliance's voter engagement efforts are unsolicited, and the organization expects that if permitted, it will provide voters with

4

Case 3:20-cv-00736   Document 1   Filed 08/28/20   Page 4 of 13 PageID #: 4

unsolicited absentee ballot applications in order to effectively engage them in voting. The Equity Alliance also expects that some of the voters it engages will affirmatively request to be provided an absentee ballot application.

11. Plaintiff Memphis A. Phillip Randolph Institute ("APRI") is a Memphis, Tennessee-based non-profit political advocacy and membership organization which works to strengthen ties between the labor movement and the community, increase the political impact of black voters, and implement structural changes through the American democratic process. In support of its advocacy and engagement efforts, APRI sponsors voter education and Get-Out-The-Vote programs in the community. In the upcoming elections, and in light of the challenges and health risks posed by in-person voting during the ongoing public health crisis, APRI intends to inform its more than 30 members and the labor community more broadly about safe-voting options like absentee voting, and, to the extent they are eligible, encourage voters to exercise their right to vote by mail. APRI anticipates that in order to effectively engage voters about absentee voting, its staff and volunteers will need to be able to provide eligible absentee voters with printed absentee ballot requests, sometimes without being solicited to do so. Some voters that APRI has already engaged have asked why the State requires voters to take extra steps in order to access the absentee ballot applications.

12. Plaintiff Free Hearts is a nonpartisan, nonprofit organization based in Nashville, Tennessee. Since 2015, Free Hearts has educated, organized, advocated for, and supported the families of individuals impacted by the criminal punishment system. Free Hearts works across the State and in coalition with other nonprofit groups to support approximately 426 incarcerated and formerly incarcerated individuals and their families. It has 5 full-time staff and approximately 40 volunteers who engage with their community base on a regular basis. Since 2017, Free Hearts has

also been working to expand the franchise to those impacted by the criminal justice system. To that end, Free Hearts registers eligible individuals in jails, advocates for jails to become polling sites, helps restore voting rights to formerly incarcerated individuals, and advocates for reforms around automatic voter registration in Tennessee. Free Hearts plans to undertake similar engagement efforts in advance of the November 3, 2020 elections, but in light of the ongoing COVID-19 pandemic, will dedicate additional resources, including financial resources as well as staff and volunteer time, towards absentee voter engagement. As part of its engagement, Free Hearts will inform eligible absentee voters of their right to vote by mail and help them obtain and submit their mail-in ballots. To the extent it is permitted by law, Free Hearts also expects to provide prospective voters with absentee ballot applications, and that in order to reach the most voters in its base, it will need to do so in both a solicited and an unsolicited manner. In so doing, Free Hearts would provide a critical service to eligible pretrial individuals by distributing absentee ballot applications because these individuals have to vote by mail but do not have access to the internet or printers.

## II. Defendants

13. Defendant Tre Hargett is the Secretary of State for the State of Tennessee and is sued in his official capacity. The Secretary appoints the Coordinator of Elections who serves "at the pleasure of the secretary of state" and may make regulations only as necessary to carry out the election code with "the concurrence of the secretary of state." Tenn. Code § 2-11-201(a), (c).

14. Defendant Mark Goins is the Coordinator of Elections for the State of Tennessee and is sued in his official capacity. The Coordinator is "the chief administrative election officer of the state" charged with "obtain[ing] and maintain[ing] uniformity in the application, operation and interpretation of the election code." *Id.* § 2-11-201(b); *see also id.* §§ 2-11-202, 2-2-115. As

Coordinator, Goins is also authorized to investigate or direct local authorities to investigate "the administration of the election laws," and to "report violations to the district attorney general or grand jury for prosecution." *Id.* § 2-11-202(a)(5).

15. Defendant Amy Weirich is the District Attorney General for Shelby County, Tennessee, and is sued in her official capacity. Under Tennessee law, the District Attorney General is charged with "prosecut[ing] in the courts of the district all violations of the state criminal statutes and perform[ing] all prosecutorial functions attendant thereto." *See id.* § 8-7-103. Moreover, under State law, violations of the election laws may be reported to the district attorney general for prosecution. *See id.* § 2-11-202(a)(5)(A)(i).

### FACTS

16. This November, in light of the ongoing COVID-19 pandemic, a record number of Tennesseans are expected to vote absentee in the presidential election.

17. In order to do so, absentee-eligible voters will first need to apply for an absentee ballot from their county election commission, and return the completed form on or before October 5, 2020.

18. The application to vote by mail is made publicly-available online to download and print. One version of the application is available from the Secretary of State's website, and other versions, created by the State's various county election commissions and approved by the Secretary of State, are similarly available from the respective county election commissions' websites.

19. Once the voter has obtained a printed copy of the application, the voter "may have anyone the voter chooses . . . write out the voter's absentee voting by mail application except for the voter's signature or mark." Tenn. Code § 2-6-203.

20. But under Tennessee law, the voter may not ask anyone other than an employee of an election commission to help them actually obtain the absentee ballot application in the first place. Similarly, no one other than an employee of an election commission may provide a voter with an application to vote absentee—whether or not the voter requests it from them—without committing a felony.

21. That is because under Tennessee Code § 2-6-202(c)(3), "[a] person who is not an employee of an election commission commits a Class E felony if such person gives an application for an absentee ballot to any person." If convicted, a person faces loss of voting rights, a sentence of at least one and up to six years in prison, and a fine of up to $3,000.

22. For Plaintiffs, who are Tennessee-based individuals and community organizations that are committed to engaging and organizing Tennesseans around making their voices heard through voting, this criminal prohibition on the distribution of absentee ballot applications is an extraordinarily burdensome constraint on their ability to fully engage with voters and to encourage them to vote this Fall.

23. In election after election, Plaintiffs have run or participated in voter engagement programs involving voter registration activities, voter education, and voter turnout. Such efforts are at the core of Plaintiffs' political speech and advocacy activities. Plaintiffs plan to continue this outreach in the lead up to the November 2020 election.

24. In advance of the November 2020 election, outreach to eligible absentee voters will play a central role in Plaintiffs' voter engagement strategy. In light of the ongoing COVID-19 pandemic more Tennesseans are expected to want to vote by mail to protect themselves and their family members from exposure to the virus at in-person voting locations. Indeed, in the August

2020 election, more than 116,000 Tennessee voters cast absentee ballots, which is over five times more than had done so in the prior four August elections.

25. Moreover, the Tennessee Supreme Court recently confirmed that for the November election, Tennesseans who have a special vulnerability to COVID-19, as well as their caretakers, will be eligible to vote absentee. As a result, more Tennesseans are eligible to vote absentee in November 2020 than have been in any prior general election.

26. In light of the COVID-19 pandemic and the shifting voter preference towards voting absentee, Plaintiffs will focus significant time and resources on organizing their members and communities, where they are eligible, to vote absentee. This will necessarily include discussing with voters the benefits of voting by mail, reminding eligible absentee voters about application and ballot submission deadlines and requirements, and following up with voters to ensure their ballots were received, cast and counted. And, as a key part of this absentee voter engagement, Plaintiffs will, if permitted, provide potential absentee voters with the blank absentee ballot applications that are available online from the state and county election commissions, so that the prospective voter may then complete and return to be added to the absentee voter rolls for the November 2020 election.

27. Having the ability to provide voters with the absentee ballot application is necessary because Plaintiffs have found that their voter engagement efforts are significantly more effective when they are able to provide voters with all of the information and requisite forms they might need to register to vote, or to request to vote absentee. For example, in Plaintiffs' experience, providing a voter registration application to a person is a much more effective way to ensure they register to vote than simply encouraging the person to register. Similarly, Plaintiffs believe, based on their experience, that providing an absentee ballot application to a voter will be a much more

9

effective way to encourage eligible voters to vote absentee than directing the voter to a website they may not be able to access, or to a form they may not be able to print.

28. This election cycle, voters have specifically asked Plaintiffs to provide them with voting materials, including absentee ballot applications, including because some such voters lack reliable access to a computer, a printer, or the Internet. Unless provided with such materials, some of Plaintiffs' members and engaged community members will simply elect to not request an absentee ballot, or vote altogether.

29. But under Tennessee Code § 2-6-202(c)(3), Plaintiffs cannot even provide absentee ballot applications to members or other eligible voters who affirmatively request them. As such, Plaintiffs are forbidden from leveraging their resources—including the ability to download and print an application for an organizational member or community member who lacks access to the Internet or a printer—to ensure that voters who need and want to apply for an absentee ballot can do so.

30. Moreover, because of the law, Organizational Plaintiffs like Tennessee NAACP, MCLC, APRI, Equity Alliance, and Free Hearts, are not able to send mailings to their members and other engaged voters including literature about the benefits of absentee voting along with a blank absentee ballot application, which the voter can then complete and return to county election officials. For groups like Organizational Plaintiff MCLC and Tennessee NAACP, which boast memberships of approximately 20,000 affiliate union members and 10,000 statewide members, respectively, including an absentee ballot application in such mass mailings is crucial to effectively reaching and encouraging as many of their eligible members as possible to vote absentee.

31. Tennessee Code § 2-6-202(c)(3)'s criminal prohibition on assisting voters in obtaining absentee ballot applications chills Plaintiffs' protected speech and associational

10

Case 3:20-cv-00736   Document 1   Filed 08/28/20   Page 10 of 13 PageID #: 10

activities, and prohibits them from fully engaging their members and other eligible absentee voters, and facilitating their ability to obtain an absentee ballot application and vote by mail.

32. The law also hampers the Organizational Plaintiffs' ability to plan and execute voter engagement strategies, which they must begin doing immediately in order to have the maximum impact for voters in advance of the November 3, 2020 election. This is because the window for Organizational Plaintiffs' members and engaged voters to begin requesting an absentee ballot for the November 3 election opened on August 5, 2020, and will permanently close on October 27, 2020. As well in advance of that deadline as possible, Organizational Plaintiffs must have certainty as to whether they can provide absentee ballot applications to members and other voters.

### CLAIM

**Violation of the Plaintiffs' Rights of Free Speech and Association
First and Fourteenth Amendments to the Constitution of the United States
42 U.S.C. § 1983**

33. Plaintiffs reallege and reincorporate by reference the allegations in the preceding paragraphs though fully set forth herein.

34. The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits the abridgment of the freedom of speech.

35. Tennessee Code § 2-6-202(c)(3) restricts the Plaintiffs' and their members' core political speech and expressive conduct—namely encouraging voting through the distribution of absentee ballot applications in an effort to engage potential voters and encourage them to vote—by criminalizing the simple act of providing to a voter an absentee ballot application. The threat of criminal sanctions for participating in such common voter engagement activity, which is necessary to effectively engage broad swaths of Tennessee's voting population, severely burdens the Plaintiffs' and their members' First Amendment rights. This is particularly true in the context

11

Case 3:20-cv-00736   Document 1   Filed 08/28/20   Page 11 of 13 PageID #: 11

of an election where tens of thousands of prospective absentee voters may need Plaintiffs' and their members' or volunteers' assistance in applying to vote by mail, including in the form of being provided an absentee ballot application.

36. Because of the criminal sanctions imposed by Tennessee Code § 2-6-202(c)(3), Plaintiffs and their members and volunteers will not be able to effectively engage potentially eligible absentee voters. Nor will they be able to effectively carry out a key aspect of their voter engagement strategy for the November election: encouraging voters to vote by mail rather than not vote at all out of a fear of exposure to COVID-19 at in-person polling locations. Indeed, the law makes it extremely difficult for the Plaintiffs to facilitate a key step in a potential absentee voter's ability to vote by mail, obtaining the absentee ballot itself.

37. Tennessee Code § 2-6-202(c)(3) chills Plaintiffs' core political speech, and does so without being narrowly-tailored to serve a compelling state interest. The State's prohibition on Plaintiffs' dissemination of blank absentee ballot applications, which the State itself makes freely available online, does not relate to the prevention of fraud, and serves no purpose at all, other than making it more difficult for Tennessee voters to cast their ballots by mail. Tennessee Code § 2-6-202(c)(3) therefore unconstitutionally infringes on Plaintiffs' First Amendment right to free speech.

38. Moreover, because the threat of criminal sanctions imposed by Tennessee Code §§ 2-6-202(c)(3) extends to the Organizational Plaintiffs' members, who would themselves also conduct voter outreach activity like providing the absentee ballot application the State makes available online to potentially eligible voters, the statute also unconstitutionally infringes on the Organizational Plaintiffs' First Amendment right to the freedom of association.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.　Declare that Defendants' enforcement of § 2-6-202(c)(3) of the Tennessee Code is unconstitutional;

B.　Preliminarily and permanently enjoin Defendants from enforcing § 2-6-202(c)(3) for the dissemination of applications for absentee ballots by any person;

C.　Award Plaintiffs their reasonable attorneys' fees and costs;

D.　Order such other and further relief as may be just under the circumstances.

Dated: August 28, 2020

Respectfully Submitted,

*/s William L. Harbison*

| | |
|---|---|
| Danielle Lang* | William L. Harbison (No. 7012) |
| Ravi Doshi* | Lisa K. Helton (No. 23684) |
| Molly Danahy* | Christopher C. Sabis (No. 30032) |
| Jonathan Diaz* | Christina R.B. López (No. 37282) |
| Campaign Legal Center | Sherrard, Roe, Voigt & Harbison, PLC |
| 1101 14th Street NW, Suite 400 | 150 3rd Avenue South, Suite 1100 |
| Washington, DC 20005 | Nashville, TN 37201 |
| Tel.: (202) 736-2200 | Phone: (615) 742-4200 |
| dlang@campaignlegalcenter.org | Fax: (615) 742-4539 |
| rdoshi@campaignlegalcenter.org | bharbison@srvhlaw.com |
| mdanahy@campaignlegalcenter.org | lhelton@srvhlaw.com |
| jdiaz@campaignlegalcenter.org | csabis@srvhlaw.com |
| | clopez@srvhlaw.com |

Ezra Rosenberg*
Pooja Chaudhuri*
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW Suite 900
Washington, DC 20005
Tel.: (202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

* Pro Hac Vice Applications Pending