**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JEFFREY LICHTENSTEIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TRE HARGETT, et. al.,<br><br>Defendants. | Civil No. 3:20-cv-0736 |

**PLAINTIFFS' REPLY**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Tennessee makes it a felony for anyone but an employee of an election commission to distribute blank absentee ballot applications, even though such applications are freely available on the internet. Tennessee is the only state in the nation that criminalizes the distribution of absentee ballot applications. Plaintiffs are civic engagement organizations that seek to engage absentee voters by providing them with get-out-the-vote materials, including the applications necessary for voters to obtain an absentee ballot. Plaintiffs' proposed activity is quintessentially "interactive communication concerning political change" at the heart of the First Amendment's protections. *Meyer v. Grant*, 486 U.S. 414, 422 (1988). Yet, Defendants offer only threadbare assertions that Tenn. Code Ann. § 2-6-202(c)(4) (the "Law") somehow prevents voter confusion and protects election integrity. But it is not clear how printing and distributing publicly available forms harms those interests.

In any event, the Law is plainly not narrowly tailored—or tailored at all—to the State's alleged interests. The Law's results are absurd. Under the Law, a person can *write* a request for an

application for an absentee ballot (which will be treated as an application) for another voter who requests it, but commits a felony if she instead hands the requesting voter a *blank* equivalent form obtained from the State itself. Such a prohibition on core First Amendment political expressive conduct can only pass muster if it can withstand exacting scrutiny. But the Law cannot even pass rational basis review. Absent an injunction from this Court, Plaintiffs' most effective means of engaging absentee voters will by stymied. Meanwhile, an injunction would not harm Defendants, who would not need to *do* anything except refrain from seeking to prosecute Plaintiffs. This Court should grant Plaintiffs' motion for preliminary injunction.

## ARGUMENT

### I.    Plaintiffs' claims are not barred by laches or the *Purcell* doctrine.

In the Sixth Circuit, "Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Brown–Graves Co. v. Central States, Se. and Sw. Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000) (citing *Meade v. Pension Appeals and Review Comm.*, 966 F.2d 190, 195 (6th Cir. 1992); *see also Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004); *Herman Miller, Inc. v. Palazzetti Imps. and Exps., Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). Laches "is not . . . a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced." *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003) (citation and internal quotation marks omitted).

#### a.   Plaintiffs did not unreasonably delay assertion of their rights.

Plaintiffs have not delayed unreasonably in asserting their rights. As this Court is aware, Plaintiffs have been seeking relief on the criminalization of their proposed expressive conduct since at least June 12, 2020. *MAPRI v. Hargett*, No. 3:20-cv-00374, Doc. 43 (M.D. Tenn. June 12,

2020) ("*MAPRI*"). This Court has already held that the similar relief sought in the June 2020 preliminary injunction motion was not barred by laches as to the November election. *MAPRI,* Doc. 55 at 6. Especially in light of recent changed circumstances (i.e., a global pandemic that requires a shift in focus to mail voting), Defendants' argument that Plaintiffs have slumbered on their rights because the law has been on the books since 1979 fails.

On August 11, 2020, this Court denied Plaintiffs' motion in the related case to preliminarily enjoin Tenn. Code Ann. § 2-6-202(c)(4) after finding that Plaintiffs proposed course of conduct could possibly violate Tenn. Code § 2-6-202(c)(3) but could not and did not violate subsection (c)(4). *MAPRI*, Doc. 43. The next day, Plaintiffs asked Defendants to clarify whether they agreed with the Court's interpretation and believed the dissemination of the absentee ballot application forms that are widely available on the Secretary of State and various County Election Commission websites is a felony pursuant to Tenn. Code § 2-6-202(c)(3) or a misdemeanor pursuant to Tenn. Code § 2-6-202(c)(4). Doc. 21 at 13 n.1; *MAPRI,* Doc. 69 at 2, n. 2. Defendants refused. *Id.* Absent clarification from Defendants, on August 14, 2020, Plaintiffs immediately filed a Motion for Reconsideration. *MAPRI*, Doc. 68-69. Relying upon the State's averments that Tenn. Code § 2-6-202(c)(4) did not apply to Plaintiffs' proposed conduct—assurances that Defendants refused to provide to Plaintiffs and did not previously assert as a defense to Plaintiffs' claim in their Answer to the initial complaint, their opposition to the motion for a preliminary injunction, or their motion to dismiss Plaintiffs' claims[1]—the Court denied Plaintiffs' Motion for Reconsideration on August

[1] A response from Defendants on this issue would have avoided the need for a motion for reconsideration, preserved judicial efficiency, and allowed Plaintiffs to move forward more quickly in challenging the correct statute. But, Defendants have repeatedly refused to provide clarification to Plaintiffs on the application of the laws challenged herein and in the related case. *See* Doc. 21 at 13 n.1; *MAPRI,* Doc. 69, at 2, n. 2; *see also* Ex. A (email correspondence documenting Defendants' refusal to clarify the scope of the first-time voter restriction). Thus,

21, 2020. *MAPRI,* Doc. 73. One week later on August 28, 2020, Plaintiffs filed the present action challenging the enforcement of Tenn. Code Ann. § 2-6-202(c)(3). Doc. 1. Three days later, on August 31, 2020, Plaintiffs filed their Motion for Preliminary Injunction. Doc. 11. As this timeline demonstrates, Plaintiffs have not slept on their rights.

The State argues that any delay due to Plaintiffs' error in filing suit against the wrong statute supports laches. But laches does not apply simply because of Plaintiffs' "failure . . . to discover the appropriate remedy" so long as Plaintiffs have acted with due diligence. *Southern Pac. Co. v. Bogert*, 250 U.S. 483, 490 (1919). Likewise, where Plaintiffs did not acquiesce in any lack of diligence, but instead maintained other suits, their right to assert an equitable claim is not barred by laches solely because of a lapse of time. *Id*. at 488–98; *see also Ott v. Midland-Ross Corp.*, 600 F.2d 24, 33 (6th Cir. 1979). This Court has recognized that Plaintiffs' understanding, while incorrect, was "understandable."[2] *MAPRI,* Doc. 73 at 3. And the delay caused by Plaintiffs' error was certainly not purposeful. *See Michigan State A. Philip Randolph Inst. v. Johnson*, 209 F.Supp.3d 935 (E.D. Mich. 2016) (holding that the doctrine of laches did not apply where defendant failed to produce evidence that the Plaintiffs purposefully delayed).

Defendants' reliance on *Crookston v. Johnson*, 841 F.3d 396, 398–399 (6th Cir. 2016) is misplaced. In *Crookston,* the Sixth Circuit held that the plaintiff's lack of *any* explanation for

---

Defendants' suggestion that it was incumbent on Plaintiffs to seek clarification from the State falls flat.

[2] Notably, the request for absentee ballot available online nowhere contains a notice indicating that its distribution is a felony. Defendants are not shy about warning voters of the potential crimes they may commit by misusing official election documents. For example, the State's Mail-In Application for Voter Registration conspicuously includes a warning in red ink detailing the specific penalty associated with the nefarious use of the form: "Giving false information to register to vote or attempting to register when not qualified is a felony punishable by not less than two (2) years nor more than twelve (12) years imprisonment or a fine of $5,000 or both." Tennessee Mail-In Application for Voter Registration, https://sos-tn-gov-files.s3.amazonaws.com/forms/ss-3010.pdf.

delay, let alone a reasonable one, was "the first and most essential [reason]" it stayed the preliminary injunction. *Id*. Plaintiffs here, unlike the plaintiff in *Crookston*, have articulated several reasonable explanations for challenging subsection (c)(3) now. Further, *Crookston* involved a state law in Michigan that penalizes voters who expose their marked ballots to others by refusing to count their votes. The Sixth Circuit expressly stated that the outcome may have been different if violators of the law faced a criminal penalty.

> As the Secretary has repeatedly made clear, moreover, there is no risk that Crookston or anyone else will be fined or face jail time for sharing photographs of their ballots. The Secretary has indicated that she will not prosecute anyone for such violations. Instead, with a hint of Solomonic wisdom, the law declares that violators will face one penalty: the vote they wanted the world to see will not count.

*Id*. at 400.

This case is instead more akin to the situation in *Am. Civil Liberties Union of Ohio, Inc.*, 385 F.3d at 647, where the plaintiff organization filed its complaint and motion for preliminary injunction 11 days after learning of the Defendant's failure to adhere to his constitutional duty to hold a special Congressional election. Plaintiffs in the present action filed their Complaint just 9 days after learning that Defendants considered the dissemination of the blank absentee request forms a violation of Tenn. Code Ann. § 2-6-202(c)(3) rather than (c)(4). *MAPRI,* Doc. 71.

**b. Defendants failed to show that they have been prejudiced by any delay.**

Defendants have not been prejudiced by Plaintiffs' alleged delay so as to warrant the application of laches. "The application of the doctrine lies within the discretion of the trial court, with the primary focus being not on the length of time that has elapsed . . . but rather whether the party relying on laches as a defense has been prejudiced by the delay." *Gary R. Prince Revocable Trust v. Blackwell*, 735 F. Supp.2d 804, 819 (M.D. Tenn. 2010) (internal quotation marks omitted). The prejudice component of laches requires that the party asserting it show "some substantial

administrative or logistical difficulties, confusion, disorganization, or expense which would be caused" if the Court allowed Plaintiffs to bring a constitutional claim. *Michigan Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 682 (W.D. Mich. 2010).

Defendants here, similar to the defendant in *Taft*, have failed to introduce "evidence specifically demonstrating how this short delay ha[s] prejudiced" them. *Am. Civil Liberties Union of Ohio, Inc.*, 385 F.3d at 647; *see also Bormuth v. Johnson*, No. 16-13166, 2016 WL 7025173 (E.D. Mich. Oct. 24, 2016) (denying assertion of laches where defendants did "not offer any facts or arguments to show how or why they would be prejudiced if the Court were to grant the injunctive relief…"). Unlike most election law cases, the suspension of Tenn. Code § 2-6-202(c)(3) will not require Defendants to *do* much of anything, other than refrain from seeking to prosecute Plaintiffs.

Defendants cite a case outside of this Circuit for the proposition that "prejudice can be inferred simply as a result of Plaintiffs' delay." Doc. 21 at 12 (citing *Marshall v. Meadows*, 921 F. Supp. 1490, 1494 (E.D. Va. 1996)). However the plaintiffs in *Marshall* asked the court to transform Virginia's primary election from an open primary to a closed primary approximately three months before the election. *Marshall*, 921 F. Supp. at 1491. While the court may infer prejudice when plaintiffs delay such a drastic request, the relief Plaintiffs request here is not nearly as dramatic, thus, the court may not infer prejudice. Defendants here will not be forced into the "frenzy of activity" that the *Marshall* court warned of if Tenn. Code Ann. § 2-6-202(c)(3) is enjoined.

Defendants argue that they are prejudiced because the parties and this Court are being forced to "address their claims on an expedited basis." Doc. 21 at 12. But a defendant's "claim of prejudice—that an expedited briefing schedule was required—is not enough to impose laches on

[a] lawsuit on its own." *Smith v. Husted*, No.: 2:16-cv-212, 2016 WL 10321579 at *4 (S.D. Oh. Mar. 11, 2016). Defendants specifically argue that addressing Plaintiffs' claim on an expedited basis will prevent them from obtaining the legislative history of the 1979 and 1994 Acts, which is prejudicial to them because they wish to confirm a factual prerequisite to the 1979 Act. Doc. 21 at 30. But Plaintiffs do not challenge what Defendants wish to confirm by obtaining that history. Even if the 1979 Act was passed in response to the events that occurred in the 1978 elections in Robertson County, Tenn. Code Ann. § 2-6-202(c)(3), which was codified in 1994, is still unconstitutional today. *See infra* Part II(b) (addressing the issues in the 1978 elections).

The only other case Defendants cite to support finding prejudice here is similarly inapposite. *See* Doc. 21 at 8 (citing *Perry v. Judd*, 840 F.Supp.2d 945, 950 (E.D. Va. 2012)). In *Perry*, the plaintiffs failed to obtain the required number of petition signatures to place their names on the ballot for a primary election and then after the deadline to collect signatures and get on the ballot had already passed, asked the court to issue a preliminary injunction placing them on the ballot. Here, the deadline for voters to submit the absentee ballot application forms that Plaintiffs wish to disseminate is over a month away.

The laches standard requires Defendants to articulate "some substantial administrative or logistical difficulties, confusion, disorganization, or expense," that will arise if the Court allows Plaintiffs to bring their claim. *Michigan Chamber of Commerce*, 725 F. Supp. 2d at 682. They have not done so. Thus, Defendants have failed to establish the second element of laches.

**c. Plaintiffs' request for relief is not barred by the *Purcell* doctrine.**

Although Defendants frame their defense in terms of laches, Defendants cite a series of cases—commonly referred to as the *Purcell* doctrine in reference to *Purcell v. Gonzalez,* 549 U.S. 1 (2006)—cautioning courts to consider the practical effects on election administration in cases

seeking relief close to an election. Doc. 21 at 6-7. But these cases are rooted in concerns about strains on electoral administration and the possibility of creating voter confusion. *Purcell*, 549 U.S. at 4-5. These principles are inapplicable here. Enjoining defendants from charging Plaintiffs with a felony for distributing a state-generated and publicly available absentee ballot application—including to voters who ask for them—does not risk confusing voters. Unlike most election cases that are seeking to alter electoral procedures while election preparation is underway, Plaintiffs are not asking Defendants to *do* anything but instead to refrain from seeking to prosecute them. *See Hill v. Williams*, No. 16-cv-02627-CMA, 2016 WL 8667798, at *8 (D. Colo. Nov. 4, 2016) (enjoining prosecution of voters for taking ballot "selfies" and holding that the *Purcell* principle did not apply because the court "tailored its injunction to ensure that it [did] not alter existing election laws or rules").

The *Purcell* doctrine is not a *per se* rule against issuing relief in the run up to an election. *See, e.g., A. Philip Randolph Inst. v. Husted,* 907 F.3d 913, 918 (6th Cir. 2018) ("The Supreme Court has never outlined a categorically higher burden for Plaintiffs who move for relief soon before an election, and this Court has explicitly rejected such a notion.") (granting emergency preliminary injunction on October 31, 2018); *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008) (upholding election injunction ordered October 18, 2008). As this Court recently recognized, "considerable (if not exactly over-abundant) amount of time still exists for election officials in Tennessee to adjust to this change and manage its consequences." *MAPRI*, Doc. 79 at 57. Indeed, in this context, election officials need not adjust or manage anything.

## II. Plaintiffs are likely to succeed on the merits.

### a. Plaintiffs' proposed activity is expressive conduct protected by the First Amendment.

Tenn. Code Ann. § 2-6-202(c)(3), which imposes a categorical ban on Plaintiffs' ability to provide voters with absentee ballot applications, even when solicited, imposes a severe burden on their constitutional rights. An absentee ballot request form—much like a voter registration form—is a prerequisite to voting by mail, and its distribution is a form of political speech that aims to "creat[e] new [absentee] voters." *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 725 (M.D. Tenn. 2019) (applying "exacting scrutiny" to evaluate and overturn a statute that burdened plaintiffs' ability to engage in voter registration drives that aim to "creat[e] new registered voters," an activity which "involves the direct regulation of communication and political association.") (citing *Meyer*, 486 U.S. 414).

Defendants do not dispute that Plaintiffs' communications—including sending literature about absentee voting, Doc. 21 at 14—are expressive. Plaintiffs' inclusion of applications in these communications reinforces their expressive message that voting is important and eligible absentee voters should timely seek their ballots. Nonetheless, Defendants argue that the inclusion of an application in that literature is not itself expressive conduct. But Defendants offer no explanation for why potential voters receiving these applications—as part of a set of get-out-the-vote materials—would not understand Plaintiffs' intent to encourage them to vote and to timely apply for an absentee ballot if eligible.

The law does not countenance Defendants' attempt to slice and dice Plaintiffs' absentee voter engagement activities. Much as in this case, in *Meyer*, the defendants argued that the law against paid circulators "did not place any restraint on their own expression" because the plaintiffs could speak about the initiative without collecting signatures. 486 U.S. at 418. The Supreme Court

recognized that this type of interactive political speech cannot be so disaggregated without cutting it off at its knees: "[T]he circulation of a petition involves . . . interactive communication concerning political change." *Id.* at 421–22. The Court held that without the petition circulation activity, such interactive communication would be far less effective. *Id.* at 424; *see also Citizens for Tax Reform v. Deters*, 518 F.3d 375, 386 (6th Cir. 2008) (stating the First Amendment protects plaintiffs' "right not only to advocate their cause but also to select what they believe to be the most effective means for doing so"). Similarly, here, without the inclusion of an absentee ballot application with their communications urging voters to request an absentee ballot, Organizational Plaintiffs' communications about absentee voter registration lose their force and Tenn. Code Ann. § 2-6-202(c)(3) must therefore be subject to exacting scrutiny. *See* Tennessee NAACP Decl., Doc. 11-7 at ¶ 34; MCLC Decl., Doc. 11-4 at ¶ 28; APRI Decl., Doc. 11-5 at ¶ 25; Equity Alliance Decl., Doc. 11-6 at ¶ 34; Free Hearts Decl., Doc. 11-8 at ¶ 31; *see also* Doc. 12 at 7-9 (describing the importance of distribution of absentee ballot applications to the effectiveness of their absentee voter engagement).

In arguing that Plaintiffs' distribution of absentee ballot applications as part of its absentee voter engagement strategy is not expressive, Defendants do not address the litany of cases cited by Plaintiffs finding similar voter registration activity protected by the First Amendment or explain how this activity is distinguishable from those cases. *See* Doc. 12 at 12, n. 10, 14. Nor do Defendants address *Meyer*'s holding that Plaintiffs have "right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." 486 U.S. at 424. Indeed, Defendants' opposition demonstrates a fundamental misunderstanding of Plaintiffs' First Amendment rights. Defendants argue that Plaintiffs' "complain[t that] they are prohibited from posting the application for absentee ballot on their organizational websites" is unimportant because

"Plaintiffs have not demonstrated that the same information would not be equally accessible to voters on the governments' websites, [sic] or as many other organizations have done, simply post a link to the Tennessee Secretary of State's website." Doc. 21 at 14. At issue is not whether the application is "equally accessible" to voters elsewhere but whether Plaintiffs are prohibited from engaging in this expressive conduct. They are. Indeed, that the State is seeking a monopoly on this type of expressive conduct is precisely the problem. The First Amendment does not allow the State to require Plaintiffs to convey its message through the intermediary of the Secretary of State.

Rather than addressing the authorities in Plaintiffs' motion, Defendants cite to a set of inapposite cases about delivery of *completed* absentee ballots and absentee ballot applications *to election offices*. *See Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018) (concerning the collection of completed absentee ballots for delivery to election officials); *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366 (9th Cir. 2016) (same); *New Georgia Project v. Raffensberger,* No. 1:20-CV-01986-ELR, 2020 WL 5200930, at *21 (N.D. Ga. Aug. 31, 2020) (concerning the collection of completed absentee ballot requests for delivery to election officials); *but see Priorities USA v. Nessel*, No. 19-13341 2020 WL 2615766 (E.D. Mich. May 22, 2020) (finding that a restriction on collection and returning of absentee ballot applications triggered strict scrutiny). The expressive message of returning completed ballots or applications to election officials is not at issue here, where Plaintiffs seek to distribute materials *to voters* as part of a concerted voter engagement campaign, but are prohibited from doing so.

Two of the cases that Defendants cite actually support Plaintiffs. While *Voting for America v. Steen* is an outlier for its limited view of expressive conduct in the voter engagement arena, the majority *acknowledged* that the distribution of blank voter registration forms was expressive conduct protected by the First Amendment but held that the collection of completed forms for

delivery to election officials was not. 732 F.3d 382, 389-90, 393 (5th Cir. 2013). *Cf. League of Women Voters*, 400 F.Supp.3d at 720 (rejecting the Steen majority's attempt to "slic[e] and dic[e]" the plaintiffs' protected speech and associational activity). Likewise, the court in *Democracy North Carolina v. North Carolina State Bd. of Elections*, again, ruled that assisting voters in applying to vote absentee *is* expressive conduct while holding that the collection and return of such applications is not. No. 1:20CV457, 2020 WL 4484063, at *50 (M.D.N.C. Aug. 4, 2020) ("The court therefore finds that assisting voters in filling out a request form for an absentee ballot is 'expressive conduct' which implicates the First Amendment."). Thus, federal courts unanimously have held that assisting voters to register and apply to vote absentee—including by distributing the necessary forms—is expressive conduct. Since Tenn. Code Ann. § 2-6-202(c)(3) prohibits the distribution of absentee ballot applications, it plainly falls within the ambit of the Supreme Court's jurisprudence under *Buckley* and *Meyer* and their progeny.

**b. The State's *ipse dixit* assertions that Tenn. Code § 2-6-202(c)(3) prevents voter confusion or preserves the integrity of the ballot box are unsupported.**

Defendants repeatedly assert that Tenn. Code Ann. § 2-6-202(c)(3) "advances the state's interests in preventing voter confusion and preserving the integrity of the ballot box" without further explanation. Doc. 21 at 18; *see also id.* at 21, 24, 27. These *ipse dixit* assertions are insufficient. Defendants have failed to provide adequate explanations for *how* subsection (c)(3) further those interests and certainly have failed to show that it is meaningfully tailored to those interests.

For purposes of this preliminary injunction, Plaintiffs do not question whether the procedural safeguards in place on absentee ballots *generally* are designed to prevent voter confusion and preserve the integrity of the ballot box. The question instead is whether Tenn. Code Ann. § 2-6-202(c)(3) is narrowly tailored to serve such interests. *Meyer*, 486 U.S. at 420. Under

this rubric, all of Defendants ad hoc rationales fail. Further, Defendants' repetition of the *other* safeguards that protect those interests are irrelevant.

Defendants argue that Tenn. Code Ann. § 2-6-202(c)(3) was precipitated by irregularities in a sheriff's election. But as Defendants admit, the court found "no evidence to justify a finding of fraudulent intent." *Emery v. The Robertson Cty. Election Comm'n*, 586 S.W.2d 103, 109 (Tenn. 1979). It is true that the "irregularities" that led to the invalidation of the election included the distribution of forty absentee ballot applications to a candidate and another individual in violation of the statute requiring distribution by the commission of only one application per voter. *Id.* at 107, 110. But as noted above, that statute is no longer in practical force given that any voter can print an unlimited number of applications if she has access to a printer. It was this statutory violation—not any evidence of resulting fraud—that, *inter alia*, led the Court to invalidate the election. Thus, *Emery* says nothing about Tenn. Code Ann. § 2-6-202(c)(3)'s purpose in preventing voter confusion or fraud. *Id*.

Next, Director Goins identifies a number of other alleged justifications for Tenn. Code § 2-6-202(c)(3) that are not discussed in Defendants' opposition. They are equally unpersuasive. Defendants Goins does not explain how criminalizing the distribution of the official form is necessary to ensure "that the application provided is the correct approved form." Goins Decl., Doc. 21-1 at ¶ 4. Nor does he explain why it is important that the form "is being provided by the government," or why the application cannot be accompanied by additional instructions. *Id*. Indeed, it is this attempt to monopolize communications with voters about applying to vote absentee that violates the First Amendment. Director Goins argues that subsection (c)(3) is proper because "the voter can be confident that he will receive truthful and accurate information regarding the application form and absentee voting process." *Id.* at ¶ 21. But such a rationale is merely an

assertion that government speech is superior and, if credited as sufficient, could justify criminalizing all voter engagement speech.

As for Director Goins' assertion that Tenn. Code Ann. § 2-6-202(c)(3) furthers the goal of avoiding pre-filled absentee ballot applications or misleading instructions, *id.* at ¶ 4, 15-19, the Law is plainly not appropriately tailored to those interests. Nor do Plaintiffs assert an intention to provide pre-filled applications to their members or other voters. Whether a restriction on pre-filling absentee ballot applications is constitutional is a question for another day in another court, but any concern about pre-filling applications cannot justify an absolute bar on distributing blank applications, which is what Plaintiffs challenge here. Furthermore, there are already federal and state laws prohibiting the distribution of false and misleading voting information to voters. *See* 52 U.S.C. § 10307(d); Tenn. Code Ann. § 2-19-133; Tenn. Code Ann. § 2-19-116.

While Defendants invoke the provisions in the law restricting the distribution of absentee ballot applications to one per voter and requiring tracking of subsequent applications, Doc. 21 at 19, they do not explain how they have complied with those provisions given the availability of the forms online. Nor do they explain what *purpose* such restrictions would arguably further (if they were in fact in force).

Finally, Defendants argue that "the decision to ask for help [applying to vote absentee] must be the voter's decision, not another's." Doc. 21 at 20; *see also* Goins Decl., Doc. 21-1 at ¶ 4. But they do not explain how receiving a blank application form in the mail places pressure on a voter. Moreover, Tenn. Code Ann. § 2-6-202(c)(3) does not allow Plaintiffs to assist voters by supplying applications even when they *are* requested.

**c. Tenn. Code § 2-6-202(c)(3) does not survive either exacting scrutiny or rational basis review.**

Given the wide availability of the absentee ballot application on the internet, a *felony* prohibition on distribution of applications—solicited or unsolicited—fails even rational basis. *Cf. MAPRI,* Doc. 66 at 9, n. 9 ("With the application now being available online, one may reasonably wonder why it is still a felony (even absent nefarious surrounding circumstances) for persons not with an election commission to give an application to someone else."). It cannot clear the hurdle of exacting scrutiny under *Meyer*.

Neither *Citizens for Tax Reform* nor *Burson v. Freeman*, 504 U.S. 191 (1992), support Defendants' argument that the total prohibition on distributing absentee ballot applications can withstand exacting scrutiny. Quite the opposite. In *Citizens for Tax Reform*, the Sixth Circuit held that a near-complete ban on remuneration for signature gatherers was subject to exacting scrutiny because it imposed a "significant burden" on plaintiffs' speech by making their ability to collect signatures more difficult and more expensive. 518 F.3d at 385–86 (comparing other state statutes, found constitutional, that permitted all forms of remuneration except for one). Here, the prohibition bans Plaintiffs' speech outright – a burden that is not just significant but impossible to overcome. Likewise, in *Burson*, the Court agreed that a complete ban on political speech in a public forum—like the complete ban here—"must be subjected to exacting scrutiny." 504 U.S. at 198 (nevertheless upholding a ban on political speech within a public forum because it survived exacting scrutiny as a narrowly tailored restriction on speech). But unlike in *Burson*, as Plaintiffs' have demonstrated above, the total prohibition here is not narrowly tailored to serve the interests asserted by Defendants.

## III. Plaintiffs will suffer irreparable injury absent an injunction.

Plaintiffs have demonstrated they will suffer irreparable harm absent an injunction from this Court. Defendants argue that Tenn. Code Ann. § 2-6-202(c)(3) "does not prevent Plaintiffs from sending any and all literature that they wish to send to their target audience and in any manner, nor does it prevent them from . . . contacting their target audience to inquire whether assistance is needed with the absentee ballot process." Doc. 21 at 26. But, of course, Plaintiffs cannot send "all literature they wish to send," since what they wish to send is the precise material that voters need to apply to vote absentee. And Defendants argue that Plaintiffs can "help [voters] obtain an application," but elide that if a voter directly asks Plaintiffs to give them an absentee ballot application, they must refuse. Absent an injunction from this Court, Plaintiffs risk felony prosecution and—in a dark irony—the loss of their own right to vote if they disseminate these absentee ballot applications to voters who ask for them.

Defendants state that Plaintiffs are already engaging in the activities they wish to engage in by providing links to Tennessee's online absentee ballot request form. *Id.* at 26. But Defendants cannot dictate the form of Plaintiffs' expressive conduct. Defendants ignore the portions of Jeffrey Lichtenstein, Kermit Moore, and Charlane Oliver's declarations which establish that they *cannot* engage in the expressive conduct they wish to and make clear that many of the voters they wish to help do not have the means (i.e. printers, computers, cars, etc.) to obtain absentee ballot applications easily on their own.[3]

Plaintiffs have alleged the infringement of their First Amendment rights and thus established irreparable harm. *Baker v. Adams Cty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th

[3] Lichtenstein Decl., Doc. 11-4 at ¶¶ 22-24; Moore Decl., Doc. 11-5 at ¶ 18; Oliver Decl., Doc. 11-6 at ¶¶ 25-26, 29.

Case 3:20-cv-00736 Document 35-1 Filed 09/11/20 Page 16 of 24 PageID #: 363

Cir. 2002) ("[A] violation of First Amendment rights, even for a short time, causes irreparable harm."); *see also MAPRI,* Doc. 79 at 56 (holding that irreparable injury is presumed where First Amendment rights are curtailed). Defendants' arguments boil down to an assertion that Plaintiffs can speak other ways. But this is no response under the Constitution: "That appellees remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection." *Meyer,* 486 U.S. at 424.

## IV. Plaintiffs' requested relief will not cause substantial harm to the State and will further the public interest.

Plaintiffs' narrow requested relief here will not undermine the State's interest in the validity and integrity of its elections. *See supra* Section II(b). Tennessee is the only state with such a restriction; all 49 other states successfully protect the integrity of their elections without criminalizing speech in this manner. Defendants provide no evidence to show potential fraud or even explain how the dissemination of blank application forms could lead to fraud.[4]

Defendants seek to reframe the statute, which imposes a felony criminal penalty on anyone other than an employee of an election commission who disseminates a blank absentee ballot application, as a "minor inconvenience." *Id.* at 29. In reality, the statute chills Plaintiffs' core First Amendment rights, a burden that outweighs any unexplained State interest served by this broad prohibition. This Court's preliminary enjoinment of Tenn. Code Ann. § 2-6-202(c)(3) will not cause substantial harm to the State. Rather, "it would favorably impact the public interest" by

[4] Defendants argue that Plaintiffs' requested relief will lead people and organizations across the state to disseminate pre-filled absentee ballot applications. Goins Decl., Doc. 21-1 at 6. But, again, the Law is not tailored to avoid this harm and Plaintiffs would not object, at this stage, to an injunction tailored to allow only the distribution of blank, not pre-filled, absentee ballot applications. Defendants' complaints that Plaintiffs "do not specify the format for their mailings" or provide the "accompanying information" so that it can be screened for voter confusion further illustrate the problem. Defendants do not have the right to approve Plaintiffs' speech.

"serv[ing] to prevent what, based on the current record, likely would be a violation of the First Amendment right[s] . . . enjoyed by the American citizenry." *MAPRI,* Doc. 79 at 56.

**CONCLUSION**

For the reasons articulated herein, and in Plaintiffs' opening brief, the Court should grant the preliminary injunction motion.

Dated: September 11, 2020

Respectfully Submitted,

*/s/ William L. Harbison*

William L. Harbison (No. 7012)
Lisa K. Helton (No. 23684)
Christopher C. Sabis (No. 30032)
Christina R.B. López (No. 37282)
Sherrard, Roe, Voigt & Harbison, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Phone: (615) 742-4200
Fax: (615) 742-4539
bharbison@srvhlaw.com
lhelton@srvhlaw.com
csabis@srvhlaw.com
clopez@srvhlaw.com

Danielle Lang*
Ravi Doshi*
Molly Danahy*
Jonathan Diaz*
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel.: (202) 736-2200
dlang@campaignlegalcenter.org
rdoshi@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org

Ezra Rosenberg* Pooja Chaudhuri*
Lawyers' Committee for Civil Rights Under Law 1500 K Street NW Suite 900
Washington, DC 20005
Tel.: (202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

* Pending Pro Hac Vice

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, pursuant to Local Rule 5.01, that on this 11th day of September, 2020, the foregoing Reply was served via the Court's CM/ECF filing system on the following:

Janet Kleinfelter
Andrew B. Campbell
Alexander Rieger
Matthew D. Cloutier
Office of the Tennessee Attorney General
301 6th Ave. N.
Nashville, Tennessee 37243
janet.kleinfelter@ag.tn.gov
andrew.campbell@ag.tn.gov
alex.rieger@ag.tn.gov
matt.cloutier@ag.tn.gov

*Counsel for Defendants*

*/s William L. Harbison*

# EXHIBIT A

# Re: Memphis APRI v. Hargett

Danielle Lang <dlang@campaignlegalcenter.org>
Mon 6/15/2020 2:24 PM

**To:** Alex Rieger <alex.rieger@ag.tn.gov>
**Cc:** Jonathan Diaz <JDiaz@campaignlegalcenter.org>; Molly Danahy <mdanahy@campaignlegalcenter.org>; Ravi Doshi <rdoshi@campaignlegalcenter.org>; Pooja Chaudhuri <pchaudhuri@lawyerscommittee.org>; Ezra Rosenberg <erosenberg@lawyerscommittee.org>; Sabis, Chris <CSabis@srvhlaw.com>; Harbison, Bill <BHarbison@srvhlaw.com>; Helton, Lisa <LHelton@srvhlaw.com>; Janet Kleinfelter <Janet.Kleinfelter@ag.tn.gov>; López, Christina <CLopez@srvhlaw.com>

1 attachments (255 KB)
MAPRI v. Hargett Complaint Comparison (1).docx;

Hi Alex,

As promised, attached is a courtesy copy of our amended complaint redlined so that you can see the additions from the prior version.

Do you have an update on our question about the first-time voter requirement? Its been a question that has been popping up continuously.

Thanks,

Danielle

CLC
ADVANCING DEMOCRACY THROUGH LAW

**Danielle Lang**
Co-Director, Voting Rights & Redistricting

202.856.7911 | @DaniLang_DC

Campaign Legal Center
1101 14th St. NW Suite 400
Washington, DC 20005
campaignlegalcenter.org

Facebook | Twitter

---

**From:** Alex Rieger <Alex.Rieger@ag.tn.gov>
**Sent:** Thursday, June 11, 2020 4:43 PM
**To:** Danielle Lang <dlang@campaignlegalcenter.org>
**Cc:** Jonathan Diaz <JDiaz@campaignlegalcenter.org>; Molly Danahy <mdanahy@campaignlegalcenter.org>; Ravi Doshi <rdoshi@campaignlegalcenter.org>; Pooja Chaudhuri <pchaudhuri@lawyerscommittee.org>; Ezra Rosenberg <erosenberg@lawyerscommittee.org>; Sabis, Chris <CSabis@srvhlaw.com>; Harbison, Bill <BHarbison@srvhlaw.com>; Helton, Lisa <LHelton@srvhlaw.com>; Janet Kleinfelter

<Janet.Kleinfelter@ag.tn.gov>; López, Christina <CLopez@srvhlaw.com>
**Subject:** RE: Memphis APRI v. Hargett

Hello Danielle,

I hope this finds you well. I apologize for the late response, Janet Kleinfelter (cc'd) and I will be handling this case, but have been dealing with urgent absentee-ballot litigation in state court.

We have just filed an answer. Normally, I'd be fine waiting until an Amended Complaint is filed, but since you're going to file a Motion for Preliminary Injunction, we wanted to make sure the Court knew that the challenged laws would be defended. If you'll forward along a draft of the Amended Complaint, I'll make sure you have any assent/objection promptly. It is not our intent to engage in gamesmanship, so we'll try to be as accommodating as we can be.

As for service, we've appeared now, so I think that solves that issue.

As to your requested clarification, our clients have been in the middle of injunctions/contempt proceedings this week, so you'll hear from us as soon as we have that information.

As to a potential briefing schedule, I don't know if we'll be able to reach an agreement, but that'll depend on the terms. I'm happy to consider any suggestions and see if we can reach agreement before we have to go to the Court.

Thanks much,

Alexander S. Rieger | Assistant Attorney General
Public Interest Division
Office of the Tennessee Attorney General
War Memorial Building
301 6th Ave. North, Nashville, Tennessee 37243
Mailing Address:
P.O. Box 20207, Nashville, Tennessee 37202
p. 615.741.2408
alex.rieger@ag.tn.gov

Note: This email may contain legally PRIVILEGED and CONFIDENTIAL information. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this email is prohibited. If you have received this email in error, please delete it and immediately notify the sender.

---

**From:** Danielle Lang <dlang@campaignlegalcenter.org>
**Sent:** Tuesday, June 9, 2020 1:56 PM
**To:** Alex Rieger <Alex.Rieger@ag.tn.gov>
**Cc:** Jonathan Diaz <JDiaz@campaignlegalcenter.org>; Molly Danahy <mdanahy@campaignlegalcenter.org>; Ravi Doshi <rdoshi@campaignlegalcenter.org>; Pooja Chaudhuri <pchaudhuri@lawyerscommittee.org>; Ezra Rosenberg <erosenberg@lawyerscommittee.org>; Sabis, Chris <CSabis@srvhlaw.com>; Harbison, Bill <BHarbison@srvhlaw.com>; Helton, Lisa <LHelton@srvhlaw.com>; López, Christina <CLopez@srvhlaw.com>
**Subject:** Memphis APRI v. Hargett

Dear Alex,

I hope this email finds you well. I am writing to you about Memphis APRI v. Hargett, Case No. 3:20-cv-374 in the Middle District of Tennessee. Along with colleagues at SRVH and Lawyers' Committee, CLC represents the Plaintiffs in that case. I am writing to you because no attorney has appeared on behalf of Secretary Hargett in the matter. If this email is better directed to a different attorney assigned to the matter, please send it along to the appropriate person.

We are planning to file a motion for preliminary injunction this week, alongside an amended complaint. As such, we write for a couple reasons.

First, since Defendants have not yet filed an answer to our complaint, we are currently between the time when we can amend as of right before an answer and the time when we can amend as of right after an answer. Can you please let us know if you consent to our filing an amended complaint then? And will you agree to accept service of that amended complaint by email and not require us to re-serve (or, in the alternative, appear via ecf, so that we can serve by that means)?

Second, we are seeking a clarification on the application of the first-time voter restriction on mail-in voting in Tenn. Code § 2-2-115(7). Our understanding is that this restriction applies to anyone who registers via the mail-in application (federal or state), including those who submit it by mail but also those that are submitted through voter registration drives or otherwise. Our understanding is also that it does not apply to individuals who register online. Can you please confirm that this is in line with Secretary Hargett's implementation of this restriction? Can you also inform us whether you have interpreted the state court order related to vote by mail to override this restriction or whether you will continue to require in-person voting for first-time mail registrants? Please provide this information as soon as possible.

Finally, we plan to ask the Court to expedite the hearing of our preliminary injunction in order to obtain effective relief for the upcoming August elections. Would you be agreeable to negotiating an expedited briefing schedule or should we just direct our request to the court?

Thanks and best,

Danielle



**Danielle Lang**
Co-Director, Voting Rights & Redistricting

202.856.7911 | @DaniLang_DC

Campaign Legal Center
1101 14th St. NW Suite 400
Washington, DC 20005
campaignlegalcenter.org

Facebook | Twitter

## Re: Memphis APRI v. Hargett

Danielle Lang <dlang@campaignlegalcenter.org>
Fri 6/12/2020 2:47 PM

**To:** Alex Rieger <Alex.Rieger@ag.tn.gov>
**Cc:** Jonathan Diaz <JDiaz@campaignlegalcenter.org>; Molly Danahy <mdanahy@campaignlegalcenter.org>; Ravi Doshi <rdoshi@campaignlegalcenter.org>; Pooja Chaudhuri <pchaudhuri@lawyerscommittee.org>; Ezra Rosenberg <erosenberg@lawyerscommittee.org>; Sabis, Chris <CSabis@srvhlaw.com>; Harbison, Bill <BHarbison@srvhlaw.com>; Helton, Lisa <LHelton@srvhlaw.com>; Janet Kleinfelter <Janet.Kleinfelter@ag.tn.gov>; López, Christina <CLopez@srvhlaw.com>

Dear Alex,

Thank you for your email. Since you have filed an answer, that triggers the period under the rules where we can amend as of right, so we won't need you to review the amended complaint to consent. However, as a courtesy, I will send you a redline version of the amended complaint today so that you can easily see the additions.

And yes, now that you have appeared, I think that resolves our service question.

On timing, I think the timeline provided in the local rules--14 days for your response and 7 days for our reply--should be workable. So we will not be moving to expedite.

On our motion, I assume I can safely assume that you will oppose our PI request? We also plan to file a motion to extend the page limit for our brief in support, will you consent to that motion?

Finally, we do look forward to getting your clarification on the first-time voter restriction as soon as possible.

Thanks and best,

Danielle

**Danielle Lang**
Co-Director, Voting Rights & Redistricting

202.856.7911 | @DaniLang_DC

Campaign Legal Center
1101 14th St. NW Suite 400
Washington, DC 20005
campaignlegalcenter.org

Facebook | Twitter